## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| **RACHEL BUTRIM et al.** | * | |
| | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **V.** | * | |
| | * | **CIVIL NO. 1:24-CV-01284** |
| **MAYOR AND CITY COUNCIL** | * | |
| **OF BALTIMORE** | * | |
| | * | |
| **Defendant** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### MAYOR AND CITY COUNCIL OF BALTIMORE'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant the Mayor and City Council of Baltimore (the "City"), by and through its undersigned counsel and pursuant to Federal Rule 12(b)(6), submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Complaint. For the reasons set forth below, the City asks that Plaintiffs' Complaint be dismissed with prejudice for failure to state a claim.

Respectfully Submitted,

Ebony Thompson
City Solicitor

_____

Thomas P.G. Webb (Bar No. 18624)
Chief Solicitor
BALTIMORE CITY DEPARTMENT OF LAW
100 N. Holliday Street
Baltimore, Maryland 21202
Phone: 410-396-5784
tom.webb@baltimorecity.gov
*Attorney for Defendant Mayor and*
*City Council of Baltimore*

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ............................................................... 1, 4, 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 2

*Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992)............................... *passim*

*Doe v. Rosa*, 795 F.3d 429 (4th Cir. 2015) .................................................................. 2

*Est. of Cunningham v. Mayor & City Council of Baltimore*, 665 F. Supp. 3d 725 (D. Md. 2023)………………………………………………………………………………..7, 8, 10

*Evans v. Maryland Nat'l Cap. Parks & Plan. Comm'n*, No. CV TDC-19-2651, 2020 WL 6703718 (D. Md. Nov. 13, 2020) ............................................................... 8

*Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454 (D. Md. 2020) ..................... 12

*Mayor & City Council of Baltimore City v. Johnson*, 156 Md. App. 569 (2004) .......... 6

*Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693 (D. Md. 2013).................................. 8

*Pinder v. Johnson*, 54 F.3d 1169 (4th Cir. 1995) ........................................................ 3

*Qwest Communications Corp. v. Maryland-National Capital Park & Planning Comm'n*, 553 F. Supp. 2d 572 (D. Md. 2008) ................................................................... 2

*Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317 (4th Cir. 2012)................. *passim*

*Smith v. City of Greensboro*, No. 1:19CV386, 2020 WL 1452114 (M.D.N.C. Mar. 25, 2020)..... 8

*Turner v. Thomas*, 930 F.3d 640 (4th Cir. 2019)................................................. 1, 2, 3

*United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083 (4th Cir. 1994)................. 1

*Waybright v. Frederick Cty., MD*, 528 F.3d 199 (4th Cir. 2008) .................................... 1, 3, 4, 11

# INTRODUCTION

This matter involves a work-place accident at 205 South Stricker St. in Baltimore City (the "Property"). On January 24, 2022, three firefighters died at the Property while responding to a fire. Plaintiffs in this matter all sue as representatives of these deceased individuals, with the exception of one injured firefighter, who sues on his own behalf.

Plaintiffs' Complaint attempts to convert this tragic work-place accident into a constitutional case by asserting a claim against the City under the Fourteenth Amendment's "state-created danger" doctrine. This doctrine is so limited that the U.S. Court of Appeals for the Fourth Circuit (the "Fourth Circuit") recently noted that it has not upheld a state-created danger claim in over 20 years. *Turner v. Thomas*, 930 F.3d 640, 646 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 905, 205 L. Ed. 2d 461 (2020). Such claims are so consistently rejected because they must be supported by allegations that the government *intentionally* and *deliberately* injured its employee. *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317, 322 (4th Cir. 2012). Indeed, these claims have been rejected multiple times in this Circuit in circumstances where a firefighter tragically dies in the course of their duty. *Id*; *see also Waybright v. Frederick Cty., MD,* 528 F.3d 199 (4th Cir. 2008). Like in those cases, Plaintiffs' Complaint here alleges only a series of acts or omissions that led to a workplace accident. The Complaint does not – and cannot – plausibly allege that the City *intended* the deaths of its valued employees. As such, the City respectfully requests that Plaintiffs' Complaint be dismissed with prejudice and without leave to amend.

# STANDARD OF REVIEW

A complaint is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not "state a claim upon which relief can be granted." This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009). Moreover, the court is not obligated to accept a plaintiff's conclusory allegations regarding the legal effect of the facts alleged. *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994). Rather, a plaintiff has an obligation to provide grounds for his entitlement to relief and that obligation requires more than labels, conclusions, or a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." *Qwest Communications Corp. v. Maryland-National Capital Park & Planning Comm'n*, 553 F. Supp. 2d 572, 574 (D. Md. 2008) (*quoting Twombly*, 550 U.S. at 555). "Nor does a Complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft*, 129 S. Ct. at 1949 (internal quotation marks and citation omitted).

Thus, in order "[t]o survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (*emphasis added*) (*quoting Twombly*, 550 U.S. at 570). The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* Rather, it requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, *i.e.*, the "plausibility of 'entitlement to relief.'" *Id.* (*quoting Twombly*, 550 U.S. at 557) (emphasis added).

## ARGUMENT

### I. The Fourth Circuit Requires a Plausible Allegation of an *Intent to Harm* to Uphold a 14th Amendment State-Created Danger Claim

Plaintiffs' only claim against the City is brought pursuant to the 14th Amendment's state-created danger doctrine. The state-created danger doctrine is a limited exception to the general rule that "a defendant's mere failure to act does not give rise to liability for a due process

violation." *Turner*, 930 F.3d at 644. In the government employment context, the state-created danger doctrine requires "affirmative acts, not merely . . . inaction or omissions." *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015). The Fourth Circuit has repeatedly recognized that "the state-created doctrine is narrowly drawn, and the bar for what constitutes an 'affirmative act' is high." *Turner,* 930 F.3d at 645. This is particularly true in attempts to convert tort claims alleging negligence or recklessness into constitutional cases. In these cases, federal courts are acutely aware of the danger in allowing the due process clause to "supplant[] state tort law in almost any suit alleging that a local official has caused harm." *Waybright v. Frederick Cty., MD,* 528 F.3d 199, 204 (4th Cir. 2008)*.* As a result, "in case after the case, the Supreme Court has rejected this prospect and spurned any approach to the Fourteenth Amendment that would make it 'a font of tort law to be superimposed upon'" state tort law principals. *Id.*, quoting *Paul v. Davis,* 424 U.S. 693, 701 (1976).

The Fourth Circuit clarified the narrow boundaries of the state-created danger doctrine in *Pinder v. Johnson,* where the court held that the doctrine does not apply where "the state did not 'create' the danger, it simply failed to provide adequate protection from it." 54 F.3d 1169, 1175 (4th Cir. 1995). The *Pinder* court recognized that the government does not "commit[] an affirmative act or create[] a danger every time it does anything that makes injury . . . more likely." *Id.* Following the narrow confines on the doctrine drawn by the *Pinder* court in 1995, the Fourth Circuit has "never issued a published opinion recognizing a successful state-created danger claim." *Turner*, 930 F.3d at 646. Instead, the court has consistently rejected such claims, and repeatedly emphasized the "exactingly high bar for what constitutes affirmative conduct sufficient to invoke the state-created danger doctrine." *Id.*

State-created danger claims so consistently fail at the pleading stage because the Fourth Circuit requires a showing that the government *intentionally* and *deliberately* harmed its employee. *See, e.g.*, *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317, 322 (4th Cir. 2012) (Plaintiff "could not, without alleging an intent to harm, maintain an action for a substantive due process violation.") *Waybright v. Frederick Cnty., MD*, 528 F.3d 199, 205 (4th Cir. 2008)("For a due process challenge to executive action to succeed, the general rule is that the action must have been *intended to injure* in some way unjustifiable by any government interest.") (emphasis added). This principal is drawn from the Supreme Court's decision in *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992), a case that closely mirrors the claims asserted in the instant matter.

In *Collins*, Larry Collins, an employee in the city of Harker Heights' sanitation department, died of asphyxia after entering a manhole to unstop a sewer line. *Id.* at 119. Mr. Collins' widow brought an action under 42 U.S.C. 1983, alleging that Mr. Collins "had a right under the Due Process Clause of the Fourteenth Amendment to be free from unreasonable risks of harm . . . and . . . to be protected from the [city's] custom and policy of deliberate indifference toward [its employees'] safety." *Id.* at 126 n. 9. The suit further alleged that the City had "violated that right by following a custom and policy of not training its employees about the danger of working in sewers and not providing safety equipment and warnings." *Id.* Finally, the complaint alleged that the city had "systematically and intentionally failed to provide the equipment and training required by a Texas statute." *Id.* at 118.

In analyzing the claim, the Supreme Court first noted that the complaint "does not charge the city with willful violations of Collins' rights," and "does not claim that the city or any of its agents deliberately harmed her husband." *Id.* at 125. Instead, the complaint was premised on

"the more general allegation that the city deprived him of life and liberty by failing to provide a reasonably safe work environment." *Id.* at 125-26. The Court found that this allegation did not state a claim under the Fourteenth Amendment, holding that "[n]either the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Id.* at 126.

The Court further noted that the plaintiff's claim that the federal constitution mandated a minimum level of workplace safety was "unprecedented," and substantively distinct from the Fourteenth Amendment protections prior recognized by the Court, such as protections for pre-trial detainees, persons in mental institutions, or persons under arrest. *Id.* at 127. The Due Process guaranteed by the Constitution "includes a continuing obligation to satisfy certain minimal custodial standards," the Court held, but does not provide protection for an employee who voluntarily reports to work. *Id.* at 128.

Moreover, the *Collins* Court was "not persuaded that the city's alleged failure to train its employees, or warn them about known risks of harm, was an omission that can properly by characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* The Court noted that the claim was "analogous to a fairly typical state-law tort claim," and that "the Due Process Clause does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Id.* The Court's decision rested on the principal that "[d]ecisions concerning the allocation of resources to individual programs, such as sewer maintenance, and to particular aspects of those programs, such as . . . training . . . involve a host of policy choices that must be made by local representatives, rather than by federal judges." *Id.* at 128-29.

Applying *Collins*, the Fourth Circuit has rejected attempts to cloak workplace safety tort claims as constitutional violations. In *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317 (4th Cir. 2012), the survivors and estate of Racheal Wilson, a Baltimore City Fire Department recruit, brought suit against the City after Ms. Wilson tragically died during a "live burn" training exercise in a vacant building in Baltimore City. As here, plaintiffs alleged that the City "violated Wilson's substantive due process rights by staging the exercise with *deliberate indifference* to Wilson's safety, so as to shock the conscience." *Id.* at 319 (emphasis in original). More specifically, the *Slaughter* plaintiffs alleged that City officials knew that the building used was unsuitable for the exercise; intentionally made the premises more susceptible to dangerous fires; did not properly equip recruits; provided inadequate water supply; and violated National Fire Protection Association standards. *Id.* at 320. Taken together, plaintiffs alleged that "these and other conditions and circumstances amounted to willful violation of nationally-recognized safety standards." *Id.* (quotations omitted).

The Fourth Circuit, applying *Collins*, upheld dismissal of the action. As the Supreme Court did in *Collins*, the court differentiated the case from one in which the government has a custodial relationship with the plaintiff, such as a pretrial detainee or person under arrest, noting that in those circumstances, a "deliberate indifference to the care of persons in . . . custody can shock the conscience for purposes of finding a substantive due process violation." *Id.* at 321. The court made clear, however, that "this standard does not apply to persons in an employment relationship with the government." *Id.* The court acknowledged that the plaintiffs had alleged that the Fire Department had "failed to provide Wilson with safe working conditions, proper equipment, proper training, and particularized notice about risks of which Fire Department

officials had actual knowledge." *Id.* at 322. The court found these allegations were insufficient to state a claim, however, holding:

> [I]n the voluntary employment context the plaintiffs have not alleged arbitrary (in the constitutional sense) or conscience-shocking conduct because they did not assert that the Fire Department *intended to harm* Wilson, as would be necessary to establish a substantive due process violation.

*Id.* at 322 (emphasis in original). While it was true that "the Baltimore City Fire Department created the danger" the Court held that "this fact does not satisfy any element of the standard the Supreme Court has articulated for showing a substantive due process violation with respect to a government employee." *Id.* As such, the Fourth Circuit upheld the trial court's application of "a standard requiring the showing of intent to harm" and the trial court's conclusion "that 'however reckless' the Fire Department may have been, its actions did not 'rise to the level of a constitutional violation.'" *Id.* at 319.

This principle was most recently applied by this Court last year in *Est. of Cunningham v. Mayor & City Council of Baltimore*, 665 F. Supp. 3d 725 (D. Md. 2023). There, Trina Cunningham, a City employee, tragically fell to her death at the Patapsco Wastewater Treatment Plant. Ms. Cunningham's estate sued the City alleging a Fourteenth Amendment state-created danger claim. The allegations mirrored those asserted here, with plaintiff alleging that the City "refused to inspect and maintain walking-working surfaces" at the facility, "refused to correct or repair damages [sic] walking surfaces," and refused to abate "numerous known and foreseeable dangers or to take any precautions to prevent death or serious bodily injury." *Id.* at 730. Plaintiffs framed their allegations as deliberate and intentional acts by the City, asserting that the City "deliberately chose not to repair or maintain the . . . facility or train their employees," and that "Ms. Cunningham's death was due to the compounded intentional decisions" of the City. *Id.* at 730, 737.

This Court dismissed the case. Applying *Slaughter*, the Court found that "Plaintiffs must show here that the City defendant intended to harm Ms. Cunningham to establish a substantive due process violation in this case." *Id.* at 736. The Court noted that the Complaint described "negligent, or even egregious, conduct by the City Defendants," but nonetheless "agree[d] with the City Defendants that the allegations in the amended complaint do not show the City Defendants intended to harm Ms. Cunningham." *Id.* at 737. In so finding, the court emphasized that intentional harm, not deliberate indifference, was the correct standard for claims based on an unsafe work environment. *Id.* ("The Court is also not persuaded by Plaintiffs' argument that the deliberate indifference standard should apply to their state-created danger claim.").

Important here, the Court found that plaintiffs' references to deliberate or intentional acts by the City were insufficient to state a claim. Although plaintiffs alleged intentional acts that led to an accident, this did not amount to a showing "that the City *intended* for Ms. Cunningham to fall through the grating at the . . . facility." *Id.* (emphasis in original). In so finding, the court noted that "Plaintiffs' argument that the City Defendants' intent to harm can be measured by the natural and probable consequences of their actions is equally unavailing." *Id.* at n. 3. This ruling is consistent with *Slaughter*, which made clear that the standard requires an action taken *"with the purpose of causing harm to"* Plaintiff. *Slaughter*, 682 F.3d at 319 (emphasis in original).

The Fourth Circuit has therefore clearly articulated that in the government employment context, a plaintiff must allege a *deliberate intent* to harm an employee to establish a state created danger due process claim. This standard has been consistently and strictly enforced by trial courts in the Fourth Circuit. *See, e.g., Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 735 (D. Md. 2013) ("[T]he employee plaintiff must show that the governmental employer defendant '*intended to harm*' its employee in order to 'establish a substantive due process

8

violation'"); *Evans v. Maryland Nat'l Cap. Parks & Plan. Comm'n*, No. CV TDC-19-2651, 2020 WL 6703718, at \*13 (D. Md. Nov. 13, 2020) ("In the voluntary employment context, a plaintiff must allege intentional harm, not mere deliberate indifference."); *Smith v. City of Greensboro*, No. 1:19CV386, 2020 WL 1452114, at \*15 (M.D.N.C. Mar. 25, 2020) ("Outside of the custodial context, government conduct normally does not shock the conscience (at least not in the constitutional sense) unless it was 'intended to injure . . .'"). As described *infra*, Plaintiffs' Complaint fails to meet this standard.

## II. Plaintiff's Complaint does not Plausibly Allege that the City Intended to Harm The City Firefighters

Plaintiffs' Complaint is long and sprawling, replete with unsubstantiated claims regarding City policies dating back to the early 20th Century. Many of these claims are based only "on information and belief," a phrase used 23 times in the Complaint. Some of the allegations are outlandish, such as the entirely unsupported claim that "on information and belief" the City included the Property in a "pay to play and profit-sharing scheme." Compl. at ¶ 13. These vague allegations of corruption are supported only by a general statement that the City has a "long and inescapable history of public corruption." *Id*. at ¶ 58. Other allegations purportedly showing City "corruption" are only a description of the City's public efforts to work with non-profit partners to develop vacant homes, accompanied by the unsupported and conspiratorial allegation that fees collected under related grant agreements were "likely kept for personal gain." *Id.* at ¶ 64. These assertions, even if supported, would be insufficient to state a claim for state-created danger, but it is worth noting that these are exactly the type of "naked assertions devoid of further factual enhancement" that cannot support a claim under any circumstance. *Ashcroft*, 129 S. Ct. at 1949

Aside from these vague and unsupported claims, the Complaint is based on the same allegations as in *Slaughter* and *Cunningham*: that the City knew or should have known that the condition of the Property was dangerous but disregarded that danger. Compl. at ¶ 44. More specifically, the Complaint alleges that the City "knew and failed to tell" firefighters that the property was vacant and potentially structurally unsound. *Id.* at ¶ 13. Like in *Cunningham*, Plaintiffs rely on an OSHA report regarding the potential dangers of vacant buildings, and allege that the City "intentionally disregarded" the risk posed to firefighters employed by the City. *Id.* at ¶ 44. Ultimately, the Complaint is premised on the allegation that "the City created the danger" through its neglect of the building and failure to warn, "and then intentionally exposed the Plaintiffs to that danger." *Id.* at ¶ 43.

As described *supra*, the Supreme Court and Fourth Circuit have consistently rejected state-created danger claims based on similar allegations. In *Slaughter*, plaintiff alleged that the Fire Department had created a known danger in a vacant building by tearing down walls, scattering debris, and adding flammable excelsior to the walls. *Slaughter*, 682 F.3d at 320. These actions, Plaintiffs alleged, made the vacant building "unsuitable" for a training exercise that led to the death of a recruit. *Id.* In *Cunningham*, plaintiffs alleged that the City disregarded a series of known dangers at a wastewater treatment facility, failed to disclose or repair those known dangers, and thereby caused the death of an employee. More specifically, the *Cunningham* Plaintiffs alleged that MOSH had found 24 "serious violations" related to the maintenance and inspection of the facility, and that these violations led directly to the death of a City employee. *Cunninham*, 665 F. Supp 3d. at 729-30. Finally, in *Harker Heights*, the plaintiff alleged that the City systematically failed to train its employees, provide them with proper safety equipment, or warn them regarding known dangers of working in the sewer system. *Harker Heights,* 503 U.S.

at 117-18.  In each of the cases, like here, plaintiffs argued that a systematic failure to train, maintain, and warn was so "conscious shocking" that it rose to the level of a constitutional violation.  In each case, this argument was rejected and the case dismissed.

Indeed, the allegations in *Slaughter and Waybright* were a degree worse than those made in this case, as the City directly controlled the environments in which the death occurred – in *Slaughter* a vacant property used to train recruits, and in *Waybright* a closely supervised firefighter training facility.  In *Slaughter*, the complaint alleged that the City had actively created the danger by adding flammable materials to the walls of a vacant building and tearing down wallboard. *Slaughter*, 682 F.3d at 320.  In *Waybright*, the complaint alleged that a fire recruit was forced to run in high temperatures during a training exercise, a command that allegedly lead to his death.  *Waybright* 528 F.3d at 202-03.  Yet in both cases, despite this alleged intentional conduct, the Fourth Circuit held that a state-created danger claim could not stand because there was no plausible allegation that the City intended to harm its employees.  *Slaughter*, 682 F.3d at 319; *Waybright* 528 F.3d at 205-06.

Like in *Slaughter*, *Cunningham* and *Harker Heights*, Plaintiffs' Complaint does not allege that the City of Baltimore intended the City Firefighters' injury or death.  The Complaint only alleges a series of oversights and failures to warn that Plaintiffs maintain led to a tragic accident. The Complaint's allegation that the City "intentionally exposed the Plaintiffs to . .. danger" is insufficient, because it does not plausibly allege that the City intended the injury or death of a firefighter.  Such a serious allegation must be supported by more than the speculative evidence of alleged omissions presented by Plaintiffs' Complaint.   Moreover, Plaintiffs' vague allegations of corruption are both factually unsupported and irrelevant to the state-created danger test. Ultimately, Plaintiffs' Complaint attempts to achieve exactly what the Fourth Circuit has

cautioned against: transforming a state common law tort claim into a constitutional action. *Waybright*, 528 F.3d at 204. While Plaintiffs may consider the claimed conduct to be egregious, because no intentional harm is alleged, the Complaint fails to state a Fourteenth Amendment claim against the City. *Slaughter*, 682 F.3d at 322.

### III. Plaintiffs' Complaint Must be Dismissed Because a *Monell* Claim Cannot Stand Alone

A *Monell* claim must be supported by an allegation of a constitutional violation by a government employee. It is "axiomatic that a *Monell* claim cannot lie where there is no underlying constitutional violation by the employee." *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 459 (D. Md. 2020) (citations and quotations omitted). "No actionable claim against supervisors or local governments can exist without a constitutional violation committed by an employee." *Anderson v. Caldwell Cty. Sheriff's Office*, 524 F. App'x 854, 862 (4th Cir. 2013). "Municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages." *Waybright v. Frederick Cnty., MD*, 528 F.3d 199, 203–04 (4th Cir. 2008) *citing City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571; *see also Grayson v. Peed,* 195 F.3d 692, 696 (4th Cir.1999). Here, no constitutional claim has been alleged against any City employees. The only Defendant named in Plaintiffs' Complaint is the Mayor and City Council of Baltimore. No individual employee of the City is named as a defendant, and there are no allegations of an underlying constitutional violation committed by any City employee. As such, Plaintiffs' Complaint fails to state a claim and must be dismissed.

**CONCLUSION**

For the reasons stated herein, the City respectfully requests that this Honorable Court dismiss Plaintiffs' Complaint against the City in its entirety, with prejudice and without leave to amend.

Dated: May 31, 2024

Respectfully Submitted,
Ebony Thompson
City Solicitor

*/s/ Thomas P.G. Webb*
Thomas P.G. Webb (Bar No. 18624)
Chief Solicitor
BALTIMORE CITY LAW DEPARTMENT
100 N. Holliday Street
City Hall Baltimore, MD 21202
Telephone: 410-396-5784
Fax: 410-547-1025
tom.webb@baltimorecity.gov