## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **RACHEL BUTRIM,** *et al.* | * |
| **Plaintiffs** | * |
| **v.** | *    Civil Action No.: 1:24-cv-01284-MJM |
| **MAYOR AND CITY COUNCIL OF BALTIMORE** | * |
| | * |
| **Defendant** | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs, through their undersigned counsel, submit this Opposition to the Defendant's Motion to Dismiss (ECF 12), which the Court should deny for the reasons stated herein.

Respectfully submitted,

Dated: ___August 19, 2024___

_____
**Allen E. Honick, Esquire, #19822**
**Dustin C. Furman, #19986**
**FURMAN | HONICK LAW**
11155 Red Run Boulevard, Suite 110
Owings Mills, Maryland 21117
(410) 844-6000 – Office
(410) 705-5651 – Facsimile
allen@fhjustice.com
***Counsel for Plaintiffs***

| | |
|---|---|
| ___/s/ Kevin Stern___ | ___/s/ Kenneth Berman___ |
| **Kevin Stern, #29869** | **Kenneth Berman, #08529** |
| **Daniel Miller, #29862** | BERMAN, SOBIN, GROSS, LLP |
| MILLER STERN LAWYERS, LLC | 481 N. Frederick Avenue, Suite 300 |
| 2800 Quarry Lake Drive, Suite 280 | Gaithersburg, MD 20877 |
| Baltimore, MD 21209 | Telephone: (301) 670-7030 |
| Telephone: (410) 529-3476 | Facsimile: (301) 670-9492 |
| Facsimile: (410) 529-2450 | kberman@bsglaw.com |
| dan@millersternlawyers.com | ***Counsel for Plaintiffs*** |
| kevin@millersternlawyers.com | |
| ***Counsel for Plaintiffs*** | |

**TABLE OF AUTHORITIES**

*Anderson v. Caldwell County Sheriff's Office*, 524 Fed. App'x 854 (4th Cir. 2013)...............19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................................4

*Braun v. Maryland*, No. 1:09-cv-1897, 2010 WL 1375172 (D. Md. Mar. 31, 2010)...............4

*Bukowski v. City of Akron*, 326 F.3d 702 (6th Cir. 2003).............................................. 17

*City of Canton v. Harris*, 489 U.S. 378 (1989)............................................................ 11

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986)...................................................... 19

*Collins v. City of Harker Heights*, 503 U.S. 115 (1992).................... 5, 6, 7, 8, 9, 10, 13, 15, 19

*Cortez v. Prince George's County*, 31 Fed. Appx. 123 (2002)...................................... 4

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)........................................5, 6, 10

*Covenant Media of SC, LLC v. City of Northern Charleston*, 493 F.3d 421 (4th Cir. 2007)....18

*Cunningham v. Mayor and City Council*, 665 F. Supp. 3d 725 (D. Md. March 29, 2023)...8, 16

*Dean v. McKinney*, 976 F.3d 407 (4th Cir. 2020)........................................................ 6

*DeShaney v. Winnebago County*, 489 U.S. 189 (1989)................................................8

*Doe v. Rosa*, 795 F.3d 429 (4th Cir. 2015)................................................................8

*Dunn v. Borta*, 369 F.3d 421 (4th Cir. 2004)........................................................... 14

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999)...................................... 4

*Estate of Smith v. Marasco*, 430 F.3d 140 (3d Cir. 2005)........................................... 17

*Gibson v. Gibbs*, 99 F.4th 211 (4th Cir. 2024)........................................................... 20

*Gray by Gray v. Kern*, 702 Fed. App'x 132 (4th Cir. 2017)........................................ 9

*Grayson v. Peed*, 195 F.3d 692 (4th Cir. 1999)..........................................................19

*Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454 (D. Md. Nov. 16, 2020).................. 19

*Jones v. Wellham*, 104 F.3d 620 (4th Cir. 1997).......................................................11

*Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333 (4th Cir. 1994)...........................................11, 19

*Lisby v. Henderson*, 74 F.4th 470 (7th Cir. 2023)...................................................... 17

*Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993)........................................... 4

*Nix v. Franklin Co. School Dist.*, 311 F.3d 1373 (11th Cir. 2002)............................................17

*Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379 (4th Cir. 2014)......................5

*Pinder v. Johnson*, 54 F.3d 1169 (4th Cir. 1995)....................................................... 8

i

*Rochin v. California*, 342 U.S. 165 (1952)..................................................................5

*L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992)....................................................9, 16

*Leatherman v. Tarrant Cty.*, 507 U.S. 163 (1993)....................................................11

*Matthews v. Bergdorf*, 889 F.3d 1136 (10th Cir. 2018)............................................17

*Monell v. Dep't of Soc. Servs.*, 438 U.S. 658 (1978)..........................10, 11, 13, 18, 19

*Morin v. Moore*, 309 F.3d 316 (5th Cir. 2002)........................................................17

*Owens v. City of Independence*, 445 U.S. 622 (1980)................................................11

*Paulek v. Savage*, 836 F.3d 1117 (9th Cir. 2016)......................................................7

*Pembauer v. Cincinnati*, 475 U.S. 469 (1986).....................................................11, 18

*Pena v. DePrisco*, 432 F.3d 98 (2d Cir. 2005)........................................................17

*Polanco v. Diaz*, 76 F.4th 918 (9th Cir. 2023)..........................................................7

*Ridpath v. Bd. of Governors Marshall University*, 447 F.3d 292 (4th Cir. 2006)..............15, 17

*Rivera v. Rhode Island*, 402 F.3d 27 (1st Cir. 2005)..............................................16–17

*Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278 (4th Cir. 2012)...................................4

*Short v. Hartman*, 87 F.4th 593 (4th Cir. 2023)........................................................19

*Slaughter v. Mayor and City Council of Baltimore*, 682 F.3d 317 (4th Cir. 2012)7, 9, 13, 16, 17

*Stone v. Univ. of Marland Med. Sys. Corp.*, 855 F.2d 167 (4th Cir. 1988)..............................15

*Terrell v. Larson*, 396 F.3d 975 (8th Cir. 2005)........................................................17

*Turner v. Thomas*, 930 F.3d 640 (4th Cir. 2019)..........................................................9

*Washington v. Housing Auth. of City of Columbia*, 58 F.4th 170 (4th Cir. 2023)............... 6, 18

*Waybright v. Frederick County*, 528 F.3d 199 (4th Cir. 2008).......................................8, 9, 19

*Whitley v. Albers*, 475 U.S. 312 (1986)..................................................................7

*Woodward v. City of Worland*, 977 F.2d 1392 (10th Cir. 1992)..............................................17

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **RACHEL BUTRIM,** *et al.* | * |
| **Plaintiffs** | * |
| **v.** | *   **Civil Action No.: 1:24-cv-01284-MJM** |
| **MAYOR AND CITY COUNCIL** | * |
| **OF BALTIMORE** | |
| | * |
| **Defendant** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**</u>

Plaintiffs, through their undersigned counsel, hereby oppose the Defendant's Motion to Dismiss (ECF 12), request a hearing, and state in support:

**INTRODUCTION**

The City misrepresented the material terms of employment to Baltimore firefighters including the Plaintiffs, assuring that it would conspicuously mark and catalog structurally compromised buildings, under a City-created program called Code X-ray, so unsuspecting firefighters would never be ordered inside and face almost certain injury or death from a collapse.  The Plaintiffs accepted and maintained their municipal jobs in detrimental reliance on the City's misrepresentation.  If the Plaintiffs knew that the City had lied about the existence and extent of the Code X-Ray program, they would not have accepted or maintained their jobs. Therefore, and pursuant to governing precedent, *see infra* pg. 15, the Plaintiffs' municipal employment was not voluntary.

The City then ordered the unsuspecting Plaintiffs into the precise hazard it promised they would never encounter—a fully engulfed structurally compromised condemned building.  The building predictably collapsed on the Plaintiffs almost immediately after they entered, killing

1

three and injuring a fourth. Disturbingly, the City caused the <u>same harm in 2015</u> when it ordered three other unsuspecting and deceived firefighters into the <u>same condemned structure</u>, which partially collapsed and caused injuries. The City <u>caused the same harm in 2014</u> when it ordered a firefighter into a different unmarked structurally compromised structure who <u>died when the floor collapsed</u> beneath him.

The City's deliberate deceit—ordering firefighters into the precise hazard it promised them they would never encounter—was intentional, callous, and indefensible. The City employed this pattern and practice of deliberate deceit for more than ten (10) years before the subject incident, causing three firefighter injuries, and four firefighter deaths. The City's deliberate deceit was arbitrary and conscience-shocking under any measure of constitutional culpability.

Therefore, the Complaint states a plausible arbitrary or conscience-shocking § 1983 state-created danger claim even under the City's misguided constitutional standard of "intent to harm." The Court should deny the City's Motion accordingly.

## SALIENT FACTS

Since as early as 2010, the City knew that certain condemned properties, structurally compromised and on the brink of collapse, posed a severe risk of injury or death to the community, and especially to Baltimore firefighters. *See* Compl. (ECF 1) ¶ 28. Over that time, numerous federal agencies directed the City to mark and catalog these dangerous condemned properties to prevent firefighters from entering—the risk of injury or death from a collapse was simply too high. *Id.* ¶¶ 26–27, 37–42. The City knew that firefighters including the Plaintiffs could not discern whether a building was structurally compromised without a marking system (¶ 44), especially after a fire lieutenant was killed in an unmarked condemned home in 2014 (¶ 37),

and three firefighters were injured when the same building, (an unmarked) 205 Stricker Street, collapsed on them in 2015. *Id.* ¶ 52.

To comply with federal regulatory and grant requirements, and to secure the Plaintiffs' employment, the City repeatedly assured the Plaintiffs, and all rank-and-file firefighters, that it would conspicuously mark and catalog structurally compromised buildings, under a City-created program called Code X-ray, so (unsuspecting) firefighters would never be ordered inside and face almost certain injury or death *Id.* ¶¶ 28–30. The Plaintiffs detrimentally "relied on" this promise and "understood, based on the City's repeated, specific, and express representations, that injury or death from a condemned home collapse was not a risk inherent to their job." *Id.* ¶ 34. Indeed, "[i]f the Plaintiffs knew that the City had lied about the Code X-Ray program, then they would not have continued working for the City because they valued their lives and families more than their municipal jobs." *Id.* Thus, the Plaintiffs' employment was not "voluntary" because it was obtained by deceit.

Disturbingly, the City's assurances were deliberate, bald-faced lies (*Id.* Intro. at 3). Unbeknownst to the Plaintiffs, the City discontinued the Code X-ray program soon after creating it, but still told the Plaintiffs that the program existed. *Id.* ¶ 32. Simultaneously, the City ignored repeated housing inspector advisements before January 2020 to demolish 205 Stricker and instead, intentionally removed 205 Stricker from the annual public tax sale. *Id.* ¶¶ 63–68. The City deliberately and repeatedly misrepresented to the Plaintiffs the existence of, and protections offered by the Code X-ray program—a material term of their employment—which created or increased the risk of serious injury or death caused by a structurally compromised condemned home collapse. *Id.* ¶¶ 33, 43–44, 90, 92. Ultimately, this City-created danger caused the deaths of Plaintiffs—Firefighters Butrim, Sadler, and Lacayo, and the permanent injuries of Firefighter

3

McMaster.

## STANDARD OF DETERMINATION

A Rule 12(b)(6) motion to dismiss tests the "sufficiency of a complaint" but "does not resolve contests surrounding facts [or] merits of a claim." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The only question in deciding a motion to dismiss is whether the plaintiff has stated a claim for relief that is plausible on its face. FED.R.CIV. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing a claim's plausibility, the Court must "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Moreover, a complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also Braun v. Maryland*, No. 1:09-cv-1897, 2010 WL 1375172, at *2 (D. Md. Mar. 31, 2010) (quoting *Twombly*, 550 U.S. at 555) (Rule 8 does not require "detailed factual allegations, but it demands more than an unadorned accusation"). Rule 8(a)(2) only requires that a complaint provide a short and plain statement of that claim sufficient to give the defendant fair notice of the claims and the grounds upon which they rest. *See Edwards*, 178 F.3d at 244-45; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim.") (emphasis in original). A Rule 12(b)(6) motion

"should be granted only in limited circumstances." *Cortez v. Prince George's County*, 31 Fed. Appx. 123, 126 (2002).

Where, as here, the motion seeks to dismiss a civil-rights complaint, the Court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged*." *Edwards*, 178 F.3d at 244 (emphasis in original). Indeed, a "plaintiff fails to state a claim only when he offers 'labels and conclusions' or formulaically recites the elements of his § 1983 cause of action. *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 403 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

APPLICABLE LAW

**I.      § 1983 Substantive Due Process**

The Due Process Clause protects individuals against "arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998).[1]  Thus, the "touchstone" of a substantive due process or "executive abuse of power" violation is "conduct that shocks the conscience." *Id.*  Conduct shocks the conscience when it lacks "any reasonable justification in the service of a legitimate governmental objective." *Id.* at 846.  The conscience-shocking standard also applies in a municipal employment context.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992).

Whether conduct rises to the conscience-shocking level turns on a degree of fault measured by a "culpability spectrum." *Lewis*, 523 U.S. at 849.  On one end is "negligently inflicted harm [which] is categorically beneath the threshold." *Id.*  On the other end is "conduct intended to injure [that is] in some way unjustifiable by any government interest," which is

---

[1] Notably, the Supreme Court formulated and first applied the shock-the-conscience standard in a case where there was no intent to harm the plaintiff, but rather the government acted with full appreciation of what the Court described as the brutality of their acts.  *See Rochin v. California*, 342 U.S. 165 (1952).

"most likely to rise to the conscience-shocking level." *Id.* However, conduct falling "within the middle range"—*i.e.* deliberate indifference conduct that is more than negligence but "less than intentional conduct"—"is a matter for closer calls." *Id.* (cleaned up).

The Supreme Court "expressly recognized the possibility that some official acts in this [middle] range may be actionable under the Fourteenth Amendment," and confirmed that deliberate indifference can shock the conscience: "[A]ttention to the markedly different circumstances of normal pretrial custody and high-speed law enforcement chases shows why deliberate indifference that shocks in the one case is less egregious in the other." *Id.* at 849–50.[2] This is because deliberate indifference—like intent to harm—is simply a guidepost, or a degree "of culpability sufficient to identify" if conduct falling within the middle range shocks the conscience. *Id.* at 850 n.10; *see also Dean v. McKinney*, 976 F.3d 407, 415 (4th Cir. 2020) ("deliberate indifference is an 'intermediate level of culpability' that can, if proven, also establish a due process violation") (citing *Lewis*, 523 U.S. at 848–49).

Importantly, for substantive due process claims under the Fourteenth Amendment, the Supreme Court has only required the "intent to harm" showing "when unforeseen circumstances demand an officer's instant judgment," like a police chase or riot: "[W]e hold that high-speed chases with no intent to harm . . . do not give rise to liability under the Fourteenth Amendment." *Lewis*, 523 U.S. at 854. This is because deliberate indifference applies "only when actual deliberation is practical." *Id.* at 851.

Moreover, the Supreme Court has made clear that an "employment relationship . . . is not of controlling significance" when analyzing the sufficiency of a substantive due process claim.

---

[2] Although *Lewis* offered a custodial example showing that deliberate indifference can give rise to a claim, this example was not meant to be exclusive, but rather "how deliberate indifference can rise to a constitutionally shocking level." *Lewis*, 523 U.S. at 852; *see also Washington v. Housing Auth. of City of Columbia*, 58 F.4th 170, 178 (4th Cir. 2023) (applying deliberate indifference to affirmative city conduct in a non-custodial setting); *see also infra* n.8.

*Collins*, 503 U.S. at 120 ("Neither the fact that [the] decedent was a government employee nor the characterization of the city's deliberate indifference to his safety . . . is a sufficient reason for refusing to entertain petitioner's federal claim under § 1983.").  The standard in any setting is whether the alleged conduct shocks the conscience.

For example, conduct is arbitrary and conscience-shocking when the government, with deliberate indifference, transfers an employee to an office building infested with the "known and obvious danger" of toxic mold, and conceals "the amount of, and danger posed by, the mold." *Paulek v. Savage*, 836 F.3d 1117, 1124 (9th Cir. 2016).  Conduct is similarly conscience-shocking when the government, with deliberate indifference, transfers 122 COVID-19-positive inmates to a prison where there were no cases of the virus, sparking an outbreak that kills a prison guard and over twenty-five inmates.  *Polanco v. Diaz*, 76 F.4th 918 (9th Cir. 2023), *cert. denied*, 2024 WL 2116277 (May 13, 2024).

Accordingly, the fixed standard for a substantive due process claim is conduct that shocks the conscience.  Negligent conduct <u>never</u> shocks the conscience.  Conduct intended to harm <u>presumably shocks</u> the conscience.  Deliberately indifferent conduct <u>can shock</u> the conscience when officials have "the chance for repeated reflection" and "when actual deliberation is practical."  *Lewis*, 523 U.S. at 851 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).  Thus, the degrees of culpability—deliberate indifference and intent to harm—are not "subject to mechanical application" and instead require "an exact analysis of circumstances" to determine if the alleged conduct is "conscience-shocking."  *Id.* at 850; *see also Slaughter v. Mayor and City Council of Baltimore*, 682 F.3d 317, 324–25 (4th Cir. 2012), Wynn, J., concur. (citing *Lewis*, noting "under some circumstances, deliberate indifference could shock the conscience").

In sum, when analyzing a § 1983 claim against a municipality, courts must determine: (1)

7

whether a constitutional violation occurred, and "(2) if so, whether the city is responsible for that violation." *Collins*, 503 U.S. at 120.

### A.  Special Relationship and State-Created Danger Exceptions

The Due Process Clause protects individuals from affirmative governmental conduct but does not impose liability for the government's "mere failure to act." *DeShaney v. Winnebago County*, 489 U.S. 189, 196–97 (1989) ("a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause").  There are two exceptions to the *DeShaney* rule.

The first arises where the individual and the state have a "special relationship," usually in the custodial setting, that gives rise to an affirmative duty to protect.  *DeShaney*, 489 U.S. at 199–200.  The Fourth Circuit has declined to extend the special relationship exception to voluntary employment situations.  *See Waybright v. Frederick County*, 528 F.3d 199, 207 (4th Cir. 2008) (exception does not apply where employee "voluntarily accept[s]" job); *Slaughter*, 682 F.3d at 321–22 (exception does not apply "in the context of a voluntary employment relationship"); *but see Collins*, 503 U.S. at 126 ("The employment relationship . . . is not of controlling significance.").

The second is the "state-created danger doctrine."  *Id.* at 201.  This requires a showing that the government "created or increased the risk of private danger . . . through affirmative acts, not merely omissions."  *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015); *see also Pinder v. Johnson*, 54 F.3d 1169, 1177 (4th Cir. 1995) ("state actors may not disclaim liability when they themselves throw others to the lions").  In the municipal employment setting, the government is only liable for its "affirmative acts" and not "inaction or omissions."  *Doe*, 795 F.3d at 439.  Thus, the government is not liable when it <u>fails</u> to intervene after learning that a camp counselor

sexually abused campers for several years (*Doe*); when it <u>fails</u> to abate known workplace hazards (*Cunningham v. Mayor and City Council*, 665 F. Supp. 3d 725, 733 (D. Md. March 29, 2023); when it <u>fails</u> to recognize an emergency during a firefighter training event (*Waybright*);[3] or when it <u>fails</u> to intervene in violence among protestors (*Turner v. Thomas*, 930 F.3d 640 (4th Cir. 2019)).

Conversely, the government is constitutionally liable under the state-created danger doctrine when a supervising officer shoots a police trainee during a training event where live ammunition is strictly prohibited (*Gray by Gray v. Kern*, 702 Fed. App'x 132 (4th Cir. 2017));[4] when it places a nurse "in unguarded proximity with an inmate whose record they knew included attacks on women," and the inmate rapes the nurse (*L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992)); when it transfers an employee to an office building infested with the "known and obvious danger" of toxic mold, and conceals "the amount of, and danger posed by, the mold." (*Paulek*); and when it transfers 122 COVID-19-positive inmates to a prison where there were no cases of the virus, sparking an outbreak that kills a prison guard and over twenty-five inmates (*Polanco*).

Accordingly, the legal standard for a substantive due process violation is immutable—under the special relationship and state-created danger doctrines, and even in the municipal employment setting—the conduct must be "arbitrary, or conscience shocking, in a

---

[3] In affirming the dismissal of Waybright's claim, the Fourth Circuit highlighted the fact that none of the defendants "seem[ed] to have recognized how serious Waybright's position was," believing he was just worn out, along with Waybright himself who "kept saying, 'I want to finish with my class.'" *Waybright*, 528 F.3d at 208. In other words, the government's lack of knowledge of the danger coupled with the plaintiff's insistence that he be allowed to continue in the alleged dangerous situation is "categorically beneath the threshold of constitutional due process." *Id.* (citing *Lewis*, 523 U.S. at 849).

[4] Notably, in *Kern*, the Fourth Circuit rejected the supervising officer's claim that he "accidentally fired his live service weapon," finding that the evidence of his "dangerous and deceptive behavior casts doubt" on his account such that a "jury disbelieving [the] account could find that [he] intentionally shot" the trainee). *Kern*, 702 Fed. App'x at 139–40.

constitutional sense." *Slaughter*, 682 F.3d at 322 (quoting *Collins*, 503 U.S. at 128).

**B.  Substantive Due Process in Municipal Employment**

Although the Supreme Court in *Collins* affirmed the dismissal of Collins' § 1983 claim, it expressly rejected the Fifth Circuit's reasoning that Collins' status as a municipal employee foreclosed his claim.  *See Collins*, 503 U.S. at 120.  The Court held that § 1983 does not require a separate showing of abuse of governmental power.  *Collins*, 503 U.S. at 119.  In so holding, the Court made clear that Collins' status as a city employee did not affect the merits of his § 1983 claim—"The employment relationship . . . is not of controlling significance."  *Id.*  This is because the Due Process Clause

> afford[s] protection to employees who serve the government as well as those who are served by them, and § 1983 provides a cause of action for all citizens injured by an abridgment of those protections.  **Neither the fact that Collins was a government employee nor the characterization of the city's deliberate indifference to his safety** as something other than an "abuse of governmental power" **is a sufficient reason for refusing to entertain petitioner's federal claim under § 1983**.

*Id.* at 119–20 (emphasis added).

The *Collins* Court rejected Collins' claim not, as the City suggests (at 5) because he was a municipal employee, but rather because he had not alleged affirmative conduct, only that the city failed to provide a reasonably safe work environment.  *Id.* at 127; *see also id.* at 125 ("Petitioner does not claim that the city or any of its agents deliberately harmed her husband," and did "not even allege that his supervisor instructed him to go into the sewer when the supervisor knew or should have known that there was a significant risk that he would be injured.").  Accordingly, under *Collins, Lewis*, and their progeny,[5] a municipal-employee-plaintiff sufficiently pleads a § 1983 substantive due process claim when they allege deliberate affirmative municipal conduct that creates or increases the risk of constitutional harm.

―――――――――――――――――――

[5] *See infra* n.8.

10

## II.     *Monell Claims Against a Municipality*

A municipality can be sued directly under § 1983 when the municipality itself causes a constitutional violation through an "official policy" or "custom." *Monell v. Dep't of Soc. Servs.*, 438 U.S. 658, 690 (1978) (although "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). Municipal liability can be imposed "for a single decision by municipal policy makers," which includes the municipality's "properly constituted legislative body." *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986) (quoting *Monell*, 436 U.S. at 481); *see also Owens v. City of Independence*, 445 U.S. 622, 650 (1980) (affirming that "municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983"). Thus, municipal liability under § 1983 attaches where city policymakers make "a deliberate choice to follow a course of action . . . among various alternatives." *Monell*, 436 U.S. at 483–84.

The Fourth Circuit has confirmed that a *Monell* plaintiff must allege "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of [the plaintiff's] rights." *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). Further, the municipality's actions must demonstrate "deliberate indifference to the rights of potentially affected citizens" for conduct to "be properly thought of as a city 'policy or custom.'" *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997) (quoting *City of Canton v. Harris*, 489 U.S. 378 (1989)).

Accordingly, a *Monell* plaintiff must only meet the basic "short and plain statement" requirement of Rule 8(a). *See Jackson*, 15 F.3d at 339 (quoting *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993) ("There is no requirement that he detail the facts underlying his claims, or that he plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an

official policy or custom and causation.").

**ARGUMENT**

The City offers two grounds for dismissal, arguing first that the Complaint does not allege "the City *intended* the [Plaintiffs'] deaths," and second, that a municipal employee is a necessary party in a state-created danger *Monell* claim. The City is wrong on both fronts.

First, the correct legal standard is whether the alleged conduct is plausibly "arbitrary, or conscience shocking," not whether the City intended the harm. The Complaint paints a damning picture of intentional affirmative City conduct, so persistent as to establish a custom or practice, that deprived Plaintiffs of their substantive due process rights. The Complaint states a claim even if, *arguendo*, intentional harm was the legal standard.[6]

Second, § 1983 authorizes a direct suit against a municipality when its custom or practice of arbitrary or conscience-shocking conduct creates a danger and deprives citizens like the Plaintiffs of their constitutional rights. The City's own support (at 12) explains that a municipal employee is only a necessary defendant in a failure to train *Monell* claim where the municipality is merely a passive participant. Here, the City is being sued as an active participant and not for a failure to train. Moreover, the Supreme Court and the Fourth Circuit have confirmed the validity of a *Monell* claim against a municipality alone where a municipal policy or custom caused the plaintiff's constitutional harm.[7]

Assuming the truth of all well-pleaded facts and viewed in a light most favorable to the Plaintiffs as required, the Complaint plainly states a plausible § 1983 state-created danger claim against the City for its pattern and practice of conscience-shocking conduct, which deprived the

---

[6] Even if, *arguendo*, intentional harm was the legal standard, it requires an intent to harm, not an intent to kill as the City suggests.

[7] Plaintiffs acknowledge there is no *Monell* liability without an underlying constitutional violation. However, the Complaint sufficiently states a § 1983 state-created danger claim.

Plaintiffs of their due process rights.  The Court should deny the Motion accordingly.

I.    **The Complaint States a Plausible § 1983 State-Created Danger Claim because it Alleges Affirmative, Arbitrary, and Conscience-Shocking City Conduct**

The Complaint alleges a "short and plain statement" alleging that the City "created or increased" the risk of constitutional harm through a "policy or custom" of "affirmative conduct" that was "arbitrary, or conscience-shocking."  Fed. R. Civ. P. 8(a), *Monell, Slaughter, and Collins, supra*.  The Complaint details intentional and egregious affirmative conduct from which a jury can reasonably infer the City's intent to harm the Plaintiffs.  *See, e.g., Kern*, 702 Fed. App'x at 139–40 (explicitly noting that deceit can form the basis for a reasonable inference of intent to harm in a § 1983 state-created danger claim in the municipal employment setting).  A plain read of the Complaint nullifies the City's argument (at 11) that the Complaint "only alleges a series of oversights," "omissions," and a "failure to train, maintain, and warn."

Most notably, the City "maintained a policy of knowingly and deliberately sending (unsuspecting) firefighters into structurally unsafe condemned buildings, while simultaneously and affirmatively telling those firefighters that the Code X-Ray program would prevent this exact risk."  Compl. ¶ 33 (ECF 1).  The Plaintiffs would not have accepted or maintained their municipal jobs absent the City's deliberate and repeated misrepresentations.  *Id.* ¶ 34.  The City "intentionally exposed the Plaintiffs to that [City-created] danger through a series of affirmative acts over many years according to a custom, policy, and/or practice."  *Id.* ¶ 43.  The City acted with "intent to harm its firefighters, including the Plaintiffs, with conscience-shocking conduct." *Id.* ¶ 12.  The City deliberately ignored housing inspector advisements to demolish 205 Stricker—even after it had two prior collapses and previously injured three other firefighters—and instead, intentionally removed 205 Stricker from the annual public tax sale assuring that the hazardous structure would remain undemolished, unmitigated, and waiting to

collapse on unsuspecting firefighters the next time it caught fire. *Id.* ¶¶ 64, 68. The City engaged in "an <u>intentional and egregious pattern of conduct</u>, committed over more than ten years, with such <u>conscience-shocking deliberate indifference</u> to the Plaintiffs' constitutional rights as to infer the City's <u>intention to harm</u> the Plaintiffs." *Id.* at 3 (Intro.) (emphasis added).

The Complaint alleges affirmative City conduct that falls into both the presumably arbitrary (i.e. intentional) and "middle range" (i.e. deliberately indifferent) categories on the *Lewis* culpability spectrum. *See Lewis*, 523 U.S. at 849. Regardless, the alleged conduct is arbitrary and conscience-shocking under any culpability measure.

A jury can reasonably conclude that the City intended harm by deliberately deceiving the Plaintiffs about the material terms of their employment, and then intentionally ordering them into the precise hazard they were told they would never encounter. *See, e.g., Dunn v. Borta*, 369 F.3d 421, 427 (4th Cir. 2004) ("materiality of a statement . . . is a question of fact"). A jury's conscience can similarly be shocked by the City's deliberate indifference to and callous disregard of the Plaintiffs' constitutional rights, over the ten years preceding the incident, with ample time to consider that the City's actions caused other firefighter injuries and deaths, created or increased the Plaintiffs' risk of harm that was foreseeable to the City, but expressly and explicitly unforeseeable to the Plaintiffs. *See id.* (factual questions "should normally be left to a jury rather than resolved by the court on a motion to dismiss.") (quotation omitted).

Accordingly, the Complaint sufficiently states a § 1983 state-created danger claim under *both* the intent to harm and deliberate indifference measures because the City's affirmative conduct, when viewed in the light most favorable to the Plaintiffs, was arbitrary or conscience-shocking. The Court should deny the Motion accordingly.

**A.  This Case is Unique Because the Plaintiffs' Employment was Not Voluntary**

The City argues (at 5–8) that the deliberate indifference "middle range" on the *Lewis* culpability spectrum does not apply here because the Plaintiffs were "voluntary" municipal employees.[8]  The City is wrong for at least two reasons.

First, the Plaintiffs' employment was not "voluntary" because it was only obtained by the City's misrepresentation.  *See* Compl. (ECF 1) ¶ 34.  Second, the Supreme Court in *Collins* made clear that deliberately indifferent affirmative conduct could shock the conscience in the municipal setting.  *Collins*, 503 U.S. at 119 ("Neither the fact that [plaintiff] was a government employee nor the characterization of the city's deliberate indifference to his safety . . . is a sufficient reason for refusing to entertain [plaintiff's] federal claim under § 1983."); *see also id.* at 120 (the threshold questions are "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation."

It is Hornbook law that a material employment decision "is not voluntary if it is "obtained by the employer's misrepresentation or deception" or "forced by the employer's duress or coercion."  *Ridpath v. Bd. of Governors Marshall University*, 447 F.3d 292, 311 (4th Cir. 2006) (quotation omitted).  This is because detrimental reliance on a misrepresentation "denie[s] the opportunity [for the employee] to make a free choice."  *Stone v. Univ. of Marland Med. Sys. Corp.*, 855 F.2d 167, 174 (4th Cir. 1988).  When an employee detrimentally relies on an employer's misrepresentation, the employer "has effectively deprived the employee of his protected property interest."  *Id.*

The Plaintiffs' detrimental reliance on the City's deliberate misrepresentation distinguishes this case from every prior reported Fourth Circuit decision involving a § 1983

---

[8] In *Collins*, the Supreme Court rejected an affirmative constitutional duty for a municipal employer to provide a reasonably safe work environment because the plaintiff "voluntarily accepted" his job.  *Collins*, 503 U.S. at 127–28.

state-created danger claim. This distinction is important, especially because the Fourth Circuit derived its heightened intent to harm standard in *Slaughter* solely because the claim arose "in the voluntary employment context," and not one where the plaintiff was repeatedly and deliberately deceived about the material terms of employment. *Slaughter*, 682 F.3d at 322; *see also Cunningham*, 665 F. Supp. 3d at 734; *cf. Grubbs*, 974 F.2d at 122 (reversing dismissal of city employee's § 1983 state-created danger claim and recognizing that the claim in *Collins* failed because it did not allege affirmative acts, not because the plaintiff was a municipal employee).

The Fourth Circuit in *Slaughter* found the "voluntary employment context" to be controlling. *Slaughter*, 682 F.3d at 322. With "voluntary employment" as the starting point, the *Slaughter* court engrafted a heightened pleading standard—i.e. intent to harm—onto a § 1983 claim brought by a municipal employee. *Slaughter*, 682 F.3d at 323. The *Slaughter* court ultimately held that "deliberate indifference, in the context of a voluntary employment relationship . . . is not arbitrary or conscience-shocking." *Id.* at 322. Notably, Judge Wynn authored a concurring opinion in *Slaughter* criticizing the heightened "intent" standard as "contrary to the Supreme Court's decision" in *Lewis*, reminding the majority of the "judicial discretion prescribed by *Lewis* [necessary] to determine whether the City's alleged conduct was 'conscience-shocking.'" *Id.* at 323–25.

_____

Accordingly, even if, *arguendo*, the Fourth Circuit is correct to be one of two circuits to impose an intent-to-harm pleading requirement in the voluntary municipal employment setting,[9] that standard does not apply here because the Plaintiffs' employment was not "voluntary."  *See Ridpath, supra*.  Quite the contrary.  Here, the City deliberately deceived the Plaintiffs into accepting and maintaining their jobs on false pretenses.  Therefore, contrary to what the City suggests, the *Slaughter* "voluntary employment" predicate does not exist here.  Regardless, the Complaint survives even under the heightened intentional pleading standard because it alleges

---

[9] The Fourth Circuit and the D.C. Circuit stand in isolation as the only the only federal circuits to impose the heightened "intent to harm" pleading requirement on § 1983 state-created danger claims: *See, e.g. Rivera v. Rhode Island*, 402 F.3d 27, 36 (1st Cir. 2005) ("In situations where actors have an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice to 'shock the conscience.' "); *Pena v. DePrisco*, 432 F.3d 98, 114 (2d Cir. 2005) ("[T]he allegations in the complaints before us, even if they do not accuse the defendants of acting with specific intent or desire to cause physical injury, are sufficient to assert that the defendants created a serious danger by acting with deliberate indifference to it. Whether termed 'deliberate indifference' or 'recklessness,' this mental state is sufficient to establish liability in such cases 'because it requires proof that the defendant focused upon the risk of unconstitutional conduct and deliberately assumed or acquiesced in such risk.'") (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1399 n. 11 (10th Cir. 1992), *cert. denied*, 509 U.S. 923 (1993); *Estate of Smith v. Marasco*, 430 F.3d 140, 153 (3d Cir. 2005) (to determine whether conduct is conscience-shocking, courts "must determine whether the officer is confronted with a hyperpressurized environment such as a high-speed chase, or, in the alternative, has the luxury of proceeding in a deliberate fashion; in the latter case, deliberate indifference may be sufficient to shock the conscience, while in the former, it is usually necessary to show that the officer deliberately harmed the victim."); *Morin v. Moore*, 309 F.3d 316, 321–22 (5th Cir. 2002) ("In order to recover under the state-created danger theory, we assume that a plaintiff would have to show, at a minimum, that: (1) the state actors created or increased the danger to the plaintiff and (2) the state actors acted with deliberate indifference."); *Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir. 2003) ("The guiding principle seems to be that a deliberate-indifference standard is appropriate in "settings [that] provide the opportunity for reflection and unhurried judgments," but that a higher bar may be necessary when opportunities for reasoned deliberation are not present."); *Lisby v. Henderson*, 74 F.4th 470, 472 – 73 (7th Cir. 2023) ("These cases hold that a plaintiff seeking relief under § 1983 for such a claim must plead sufficient facts to establish that the officer acted with "criminal recklessness—which is the same as deliberate indifference."); *Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005) "[p]roof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold."); *Polanco*, 76 F.4th at 926 (government "liable when they affirmatively, and with deliberate indifference, create or expose their employees to a dangerous work environment"); *Matthews v. Bergdorf*, 889 F.3d 1136, 1150 (10th Cir. 2018) (conduct is conscience-shocking when "the state actor acted recklessly in conscious disregard of the [state-created] risk"); *Nix v. Franklin Co. School Dist.*, 311 F.3d 1373, 1376 (11th Cir. 2002) ("Acts that fall between the poles of negligence and malign intent require courts to make "closer calls," in which the determination of what shocks the conscience is context-specific. "Deliberate indifference that shocks in one environment may not be so patently egregious in another.") (cleaned up).

that the City intended to harm the Plaintiffs through its affirmative policy-or-custom-driven acts, which when viewed in the light most favorable to the Plaintiffs, is arbitrary or conscience-shocking intentional conduct.

## II.    *Monell* Authorizes a Direct Claim Against a Municipality

The City argues (at 12) that "no constitutional claim has been alleged against any City employee," suggesting that an individual City employee is a necessary party defendant in a *Monell* claim.  However, the holding in *Monell* suggests otherwise—when the municipality itself causes the constitutional injury, it "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief."  *Monell*, 436 U.S. at 690.  To survive a motion to dismiss, a *Monell* plaintiff must allege "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of [the plaintiff's] rights." *Jackson*, 15 F.3d at 338.

The Supreme Court has also confirmed that municipal liability can be imposed "for a single decision by municipal policy makers," which includes the municipality's "properly constituted legislative body."  *Pembaur*, 475 U.S. at 480 (quoting *Monell*, 436 U.S. at 481). The Fourth Circuit has expressly acknowledged the validity of *Monell* claims against municipalities alone without naming individual municipal employees as defendants.  *See, e.g., Washington*, 58 F.4th at 177 (reversing dismissal and allowing *Monell* claim to proceed against housing authority alone); *see also Covenant Media of SC, LLC v. City of Northern Charleston*, 493 F.3d 421, 436 (4th Cir. 2007) (*Monell* claim can be asserted against city alone).

Here, the Complaint sufficiently states a *Monell* claim, alleging that the Mayor and City Council of Baltimore—i.e. the "policy maker"—deliberately deceived the Plaintiffs and created or increased the risk of constitutional harm under a City policy or custom, which "proximately

caused the deprivation" of Plaintiffs' substantive due process rights.  *See Jackson, supra*.  The Court should deny the Motion accordingly.

The cases cited on page 12 of the City's Motion are the progeny of *City of Los Angeles v. Heller*, which stands for the simple and well-settled proposition that a municipality can only be liable when the plaintiff's harm is caused by a constitutional injury, not as the City suggests, that a *Monell* claim cannot survive against a municipality alone.  475 U.S. 796, 799 (1986) (government not liable not liable when "a person suffers no constitutional injury").  Moreover, these cases all involve failure to train *Monell* claims where the municipality is charged with a failure, not an affirmative act, as merely a passive participant in the harm.  *See Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 460 (D. Md. Nov. 16, 2020) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised.") (citation omitted); *Anderson v. Caldwell County Sheriff's Office*, 524 Fed. App'x 854, 862 (4th Cir. 2013) ("Because no Fourth Amendment violation occurred, the sheriff and the CCSO may not be held liable for failure to train or supervise the Caldwell County deputies.").[10]

Here, the *Monell* claim seeks to hold the City liable as an active participant, not merely as a passive observer.  Therefore, the threshold questions are (1) whether the "harm was caused by a constitutional violation, and (2) if so, whether the [C]ity is responsible for that violation." *Covenant*, 493 F.3d at 436 (quoting *Collins*, 503 U.S. at 120).

Finally, it would be futile to name individual defendants in this case because they would be sued in their official capacities as they were carrying out a City policy or custom while in the

---

[10] The City also cites *Waybright* and *Grayson v. Peed*, 195 F.3d 692 (4th Cir. 1999).  However, *Waybright* did not involve a *Monell* claim, but rather a § 1983 claim for the "supervisor[s'] role in creating the conditions that allegedly led to Waybright's death."  *Waybright*, 528 F.3d at 203.  And *Grayson* was abrogated in 2023 by *Short v. Hartman*, 87 F.4th 593 (4th Cir. 2023).

scope of their employment, as well-pleaded in the Complaint. The individuals would be entitled to immediate dismissal and the City would remain the proper, and only defendant. *See, e.g., Gibson v. Gibbs*, 99 F.4th 211, 214 (4th Cir. 2024) ([s]uits against state officials in their official capacity are treated as suits against the State and are thus barred by sovereign immunity" (quotation omitted).

## CONCLUSION

The Court should deny the City's Motion for all the foregoing reasons.

Respectfully submitted,

Dated:    June 6, 2024

**Allen E. Honick, Esquire, #19822**
**Dustin C. Furman, #19986**
FURMAN | HONICK LAW
11155 Red Run Boulevard, Suite 110
Owings Mills, Maryland 21117
(410) 844-6000 – Office
(410) 705-5651 – Facsimile
allen@fhjustice.com
dustin@fhjustice.com
***Counsel for Plaintiffs***

|      */s/ Kevin Stern*      |      */s/ Kenneth Berman*      |
|---|---|
| **Kevin Stern, #29869** | **Kenneth Berman, #08529** |
| **Daniel Miller, #29862** | BERMAN, SOBIN, GROSS, LLP |
| MILLER STERN LAWYERS, LLC | 481 N. Frederick Avenue, Suite 300 |
| 2800 Quarry Lake Drive, Suite 280 | Gaithersburg, MD 20877 |
| Baltimore, MD 21209 | Telephone: (301) 670-7030 |
| Telephone: (410) 529-3476 | Facsimile: (301) 670-9492 |
| Facsimile: (410) 529-2450 | kberman@bsglaw.com |
| dan@millersternlawyers.com | ***Counsel for Plaintiffs*** |
| kevin@millersternlawyers.com | |
| ***Counsel for Plaintiffs*** | |

## CERTIFICATION OF SERVICE

**I HEREBY CERTIFY** that on this 19th day of August, 2024, a copy of the foregoing *Opposition* was served on all counsel via the Court's ECF system to:

_____

**Allen E. Honick, Esquire, #19822**

2