IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| RACHEL BUTRIM et al. | * |
| Plaintiffs, | * |
| V. | * |
| | * CIVIL NO. 1:24-CV-01284 |
| MAYOR AND CITY COUNCIL OF BALTIMORE | * |
| Defendant | * |

**************************************************************************

<u>MAYOR AND CITY COUNCIL OF BALTIMORE'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

Defendant the Mayor and City Council of Baltimore (the "City"), by and through its undersigned counsel and pursuant to Federal Rule 12(b)(6), submits this Reply Memorandum in support of its Motion to Dismiss Plaintiffs' Complaint. For the reasons set forth below, the City asks that Plaintiffs' Complaint be dismissed with prejudice for failure to state a claim.

Respectfully Submitted,

Ebony Thompson
City Solicitor

_____
Thomas P.G. Webb (Bar No. 18624)
Chief Solicitor
BALTIMORE CITY DEPARTMENT OF LAW
100 N. Holliday Street
Baltimore, Maryland 21202
Phone: 410-396-5784
tom.webb@baltimorecity.gov
*Attorney for Defendant Mayor and City Council of Baltimore*

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. Caldwell Cty. Sheriff's Office*,
  524 F. App'x 854 (4th Cir. 2013) ................................................................................ 9

*Collins*,
  503 U.S. ................................................................................................................. 3, 7

*Corder v. Antero Res. Corp.*,
  57 F.4th 384 (4th Cir. 2023) ...................................................................................... 5

*Covenant Media of SC, LLC v. City of Northern Charleston*,
  493 F.3d 421 (4th Cir. 2007) ..................................................................................... 9

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
  489 U.S. 189 (1989) .................................................................................................. 6

*Est. of Cunningham v. Mayor & City Council of Baltimore*,
  665 F. Supp. 3d 725 (D. Md. 2023) ....................................................................... 2, 8

*Evans v. Md. Nat'l Cap. Parks & Plan. Comm'n*,
  2020 WL 6703718 (D. Md. Nov. 13, 2020) ............................................................... 2

*Gray by Gray v. Kern*,
  702 F. App'x 132 (4th Cir. 2017) ............................................................................... 4

*Lewis*,
  523 U.S. 118 S.Ct. 1708 ......................................................................................... 3, 4

*Paulek v. Savage*,
  836 F.3d 1117 (9th Cir. 2016) ................................................................................... 3

*Ridpath v. Bd. of Governors Marshall Univ.*,
  447 F.3d 292 (4th Cir. 2006) ..................................................................................... 5

*SAS Assocs. 1, LLC v. City Council for City of Chesapeake, Virginia*,
  91 F.4th 715 (4th Cir. 2024) ...................................................................................... 8

*Slaughter v. Mayor & City Council of Baltimore*,
  682 F.3d 317 (4th Cir. 2012) ............................................................................. Passim

*Smith v. City of Greensboro*,
  2020 WL 1452114 (M.D.N.C. Mar. 25, 2020) ........................................................... 2

*Stone v. Univ. of Maryland Med. Sys. Corp.*,
  855 F.2d 167 (4th Cir. 1988) ..................................................................................... 6

*Washington v. Housing Auth. of City of Columbia*,
  58 F.4th 170 (4th Cir. 2023) ................................................................................... 4, 9

*Waybright v. Frederick Cnty., MD*,
  528 F.3d 199 (4th Cir. 2008) ..................................................................................... 6

# INTRODUCTION

Plaintiffs rely on two arguments in opposition to the City's Motion to Dismiss, neither of which has merit. First, Plaintiffs suggest that the correct standard in this case is deliberate indifference, not intent to harm. This argument fails because the deliberate indifference standard was expressly rejected in *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317 (4th Cir. 2012), and has never been applied by the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit") to a state-created danger claim. Second, Plaintiffs argue that their unsupported allegations of deception transform the standard from intent to harm to deliberate indifference. Again, no federal caselaw supports this argument, which ignores the Fourth Circuit's directive in *Waybright* and *Slaughter* that deliberate indifference *only* applies in custodial settings. In short, Plaintiffs are aware that they have not plausibly alleged an intent to harm in their Complaint, and repeatedly attempt to bypass or transform the standard. Intent to harm is the clear standard for these claims in this Circuit, however, and has been consistently applied by every trial court that has considered the issue. Under this standard, Plaintiffs' claims must be dismissed.

# ARGUMENT

## I. The Intent to Harm Standard Applies to Plaintiffs' Claim

### A. The Fourth Circuit has Rejected the Deliberate Indifference Standard for Workplace Claims

The rule in the Fourth Circuit is clear: in Fourteenth Amendment workplace injury claims, the "Baltimore City Fire Department's constitutional liability . . . turns on whether it *intended to harm*" its employees. *Slaughter*, 682 F.3d at 323 (emphasis in original). There is no ambiguity or grey area in this simple principle. Important here, the Fourth Circuit in *Slaughter* explicitly rejected the argument that "deliberate indifference can be sufficient to establish a substantive due process violation when the State . . . created the danger." *Id.* at 321. The court recognized that deliberate

indifference may be applicable in the custodial context, such as for "pretrial detainees, persons in mental institutions, convicted felons, and persons under arrest." *Id.* The court rejected plaintiff's attempt to apply deliberate indifference in the employment context, however, holding that "the *Collins* Court made clear that this standard [deliberate indifference] does not apply to persons in an employment relationship with the government." *Id.* As such, applying Supreme Court precedent, the *Slaughter* court found as follows:

> And thus, as in *Collins*, these allegations might be consistent with the Fire Department's deliberate indifference. But in the voluntary employment context, the plaintiffs have not alleged arbitrary (in the constitutional sense) or conscience-shocking conduct because they did not assert that the Fire Department intended to harm Wilson, as would be necessary to establish a substantive due process violation. *See Collins*, 503 U.S. at 125–27 & n. 10, 112 S.Ct. 1061; *Lewis*, 523 U.S. at 848–49, 118 S.Ct. 1708.

*Id.* at 322.

Following this clear standard, trial courts in this district have consistently rejected attempts to apply the deliberate indifference standard to workplace injuries and have exclusively analyzed whether a complaint plausibly alleges an intent to harm. *See*, *e.g.*, *Est. of Cunningham v. Mayor & City Council of Baltimore*, 665 F. Supp. 3d 725, 737 (D. Md. 2023) ("The Court is also not persuaded by Plaintiffs' argument that the deliberate indifference standard should apply to their state-created danger claim . . . the Fourth Circuit held in *Slaughter* that an intent to harm is required to allege a state-created danger claim based upon an unsafe work environment."); *Evans v. Md. Nat'l Cap. Parks & Plan. Comm'n*, No. CV TDC-19-2651, 2020 WL 6703718, at *13 (D. Md. Nov. 13, 2020) ("In the voluntary employment context, a plaintiff must allege intentional harm, not mere deliberate indifference."); *Smith v. City of Greensboro*, No. 1:19CV386, 2020 WL 1452114, at *15 (M.D.N.C. Mar. 25, 2020) ("Outside of the custodial context, government conduct

normally does not shock the conscience (at least not in the constitutional sense) unless it was 'intended to injure ....' ").

Plaintiffs' central argument in opposition to the City's Motion to Dismiss is that this Court should disregard this precedent. Plaintiffs argue that deliberate indifference is a "middle ground" of culpability, between negligent and intentional acts, which may be actionable in the employment context. Opp. Br. at 5-8. Plaintiffs draw this conclusion from their own interpretation of the Supreme Court's decisions in *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992) and *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998). *Id.* Plaintiffs fail to note, however, that the Fourth Circuit in *Slaughter* interpreted these same cases and reached the opposite conclusion – that deliberate indifference does not apply to claims of workplace injury. *Slaughter*, 682 F.3d at 320-23 (analyzing *Lewis* and *Collins* and concluding that the deliberate indifference standard "does not apply to persons in an employment relationship with the government.").

Plaintiffs cite no published Fourth Circuit case to support the application of the deliberate indifference standard to this case. Instead, Plaintiffs rely on out of Circuit cases such as *Paulek v. Savage*, 836 F.3d 1117, 1124 (9th Cir. 2016), while simultaneously conceding that the Fourth Circuit has adopted a stricter standard than the Ninth Circuit in its review of state-created danger claims. Opp. Br. at fn 9. Tellingly, the only Fourth Circuit language cited by Plaintiffs is a concurring opinion in *Slaughter* in which Judge Wynn joined the ultimate decision but disagreed with the majority's holding that intent to harm was the only appropriate standard in the employment context. *Slaughter*, 682 F.3d at 323-27 (Wynn, J., Concurring). Plaintiffs offer no

reason why this Court should follow this dissenting language rather than the majority's clear decision.[1]

The one unpublished case from this Circuit cited by Plaintiffs only underlines that intent to harm remains the high standard in these cases. In *Gray by Gray v. Kern*, 702 F. App'x 132, 133 (4th Cir. 2017), a Baltimore Police Department trainee was shot in the head by a supervisor during a training exercise. Plaintiffs brought a claim under the state-created danger doctrine. The court recognized that such claims must be supported by an "intent to injure." *Id.* at 140. Consistent with this Circuit's precedent and contrary to Plaintiffs' arguments, the *Kern* court did not apply the deliberate indifference standard. The court found, however, that a reasonable jury could conclude that the supervisor intentionally shot the trainee. There, a criminal action had been instituted against the supervisor related to the shooting, and the court noted that evidence suggested that the supervisor was aware that his weapon was loaded, had previously pointed his live weapon at the plaintiff, and had offered a "false exculpatory account" after the fact. *Id.* A fellow officer testified that he believed the supervisor intentionally shot the trainee due to racial animus. *Id.* at fn 4. All these facts led the court to conclude that a "jury disbelieving Kern's account could find that Kern intentionally shot Gray with the live service weapon." *Id.* at 140.

The *Kern* decision makes clear why the Fourth Circuit has not issued a published decision upholding a state-created danger claim in twenty-five years. Claims of lapses in safety procedures, a failure to train, or deceptive behavior cannot support a Fourteenth Amendment workplace claim. The Fourth Circuit requires plausible and specific evidence that the government or its employees

---

[1] Plaintiffs cite, in a footnote, *Washington v. Housing Auth. of City of Columbia*, 58 F.4th 170 (4th Cir. 2023) as an example of the application of deliberate indifference. That case did not involve a workplace injury or a state-created danger claim, however, and therefore has no application here.

committed the criminal act of *intentionally harming or killing* an employee. *Kern* was the exceptional case in which the court, based in part on information from a related criminal proceeding, found credible evidence indicating that a government employee intended to harm a fellow employee.

B. <u>Vague and Unsupported Allegations of Deception do not Render a Relationship Custodial</u>

In an attempt to bypass the intent to harm rule, Plaintiffs advance another novel, unsupported legal theory: that allegations of deception allow Plaintiffs to bypass this rule altogether. Under Plaintiffs argument, "Plaintiffs' employment was not 'voluntary' because it was only obtained by the City's misrepresentation." Opp. Br. at 15. Plaintiffs contend that the vague and unspecified allegations of deceptive conduct in the Complaint transform the relevant standard from intent to harm to deliberate indifference.[2] *Id.*

This principle has never been applied in a state-created danger claim, and no federal court has ever found that an allegation of deception changes the standard from intent to harm to deliberate indifference. Neither of the two cases Plaintiffs cite in support involve state-created danger claims. These cases stand only for the general proposition that "change in employment status is not voluntary if it is 'obtained by the employer's misrepresentation or deception.'" *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 311 (4th Cir. 2006). The standard is applied in the

---

[2] Even if allegations of deception did change the relevant standard, which they do not, Plaintiffs' allegations would be insufficient. The only paragraph in the Complaint cited by Plaintiffs for these misrepresentations (Compl. at ¶ 34) is made "on information and belief" and only vaguely references that "Baltimore firefighters" relied on "repeated assurances" from the City. *Id.* It does state which City employee made these alleged assurances, which firefighters received these alleged assurances, when the alleged assurances were made, and what exactly was said. This is insufficient to state a plausible claim. *Corder v. Antero Res. Corp.*, 57 F.4th 384, 402 (4th Cir. 2023) (plaintiffs making claims of of fraud or deception "must state the factual allegations that make their belief plausible.").

5

employment context to determine if a resignation or demotion was voluntary or not. *Id.*; *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 174 (4th Cir. 1988). It has no application here.

Plaintiffs' argument also misunderstands and conflicts with the holdings in *Slaughter* and *Waybright*. Both cases recognized a fundamental distinction between the custodial setting and government employment. While deliberate indifference may apply to custodial settings, it does not apply to government employees. As *Waybright* explained, a different standard applies to plaintiffs in custody because "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume responsibility for his safety and general well-being." *Waybright v. Frederick Cnty., MD*, 528 F.3d 199, 207 (4th Cir. 2008) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199 (1989)). The *Waybright* court held that "'some sort of confinement' is needed to render a relationship custodial, such as 'incarnation, institutionalization, and the like." *Id.* Applying this rule, the court found that even though Waybright was ordered to participate in a training exercise that directly led to his death, the relationship was not custodial, because defendants "did not confine Waybright in this sense." *Id.* In the employment setting, the court found, the individual "was not in government custody, but could 'walk away' from the exercise, and indeed, the job." *Id.*; *see also Slaughter*, 682 F.3d at 322 (same).

As such, the relevant question is not whether a plaintiff has made a vague and unspecified allegation of deception, but whether a plaintiff has plausibly alleged that they were confined against their will. Nowhere does Plaintiffs' Complaint make this allegation. Plaintiffs were not incarcerated, institutionalized, or held against their will. Plaintiffs here, like those in *Waybright* and *Slaughter*, were free to walk away from their assignment or their employment. Alleged deceptive conduct does not change this fact, and therefore does not transform Plaintiffs'

relationship with the government from employment-based to custodial. As such, intent to harm, and not deliberate indifference, is the correct test for this case.

## II. Plaintiffs have not Alleged an Intent to Harm

Nowhere in their Complaint do Plaintiffs allege any facts supporting an argument that the City of Baltimore intended to harm its own firefighters. In opposition, Plaintiffs point only to allegations that the City disregarded a known risk of harm by adopting "a policy of knowingly and deliberately sending (unsuspecting) firefighters into structurally unsafe condemned buildings," while telling those firefighters that they were not at risk. Compl. ¶ 33. Plaintiffs emphasize that the City "deliberately ignored" warnings that the buildings were unsafe and "intentionally exposed Plaintiffs to that danger through a series of affirmative acts." Opp. at 13; Compl. at ¶ 12.

The allegations *exactly* mirror those rejected by the Supreme Court in *Collins*. There, the complaint alleged that the City of Harker Heights sent Collins into a dangerous manhole without training or warning him of the "dangers of working in sewers." *Collins*, 503 U.S. at 117. It further alleged that a prior incident "had given the city notice of the risks of entering sewer lines." *Id.* at 118. Finally, Collins alleged that the City had "*systematically* and *intentionally* failed to provide equipment and training required by Texas statute." *Id.* (emphasis added). The Court held that these allegations did not state a claim, stating that it was "not persuaded that the city's alleged failure to train its employees, *or warn them about known risks of harm*, was an omission that can properly by characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id*. at 128 (emphasis added). As such, Plaintiffs' central claim, that the City is constitutionally liable for an alleged failure to warn of known risks, has been squarely rejected by the Supreme Court.

Plaintiffs' allegations that the City "intentionally exposed" the Plaintiffs to danger, "intentionally removed 205 Stricker from the annual public tax sale," or made "deliberate . . .

misrepresentations" are also insufficient to state a claim for an intent to harm. Compl. at ¶ 43; Def. Opp. at 13-14. The intent to harm standard is not met by merely alleging intentional acts that led to accidental harm. The standard requires a plausible allegation that the City "acted with the purpose of causing harm to" an employee. *Slaughter*, 682 F.3d at 319. This Court recently rejected exactly these allegations in the context of a workplace accident at a wastewater treatment plant, stating that:

> while the amended complaint alleges that the City Defendants "deliberately chose not to repair or properly maintain the Grit Facility or train their employees," and that the City Defendants "deliberately chose not to inform or train their employees and/or agents regarding safety policies," these allegations do not state or show that the City *intended* for Ms. Cunningham to fall through the grating at the Grit Facility.

*Est. of Cunningham v. Mayor & City Council of Baltimore*, 665 F. Supp. 3d 725, 737 (D. Md. 2023).

Finally, while the Complaint uses the phrase "intent to harm," this conclusory parroting of the relevant standard is insufficient to state a claim. "Conclusory statements devoid of plausibility," and "[p]leadings that simply state the elements of a . . . claim" are insufficient to survive a Rule 12(b)(6) motion. *SAS Assocs. 1, LLC v. City Council for City of Chesapeake, Virginia*, 91 F.4th 715, 723 (4th Cir. 2024). Plaintiffs have alleged facts that only describe a workplace accident. These allegations may rise to the level of negligent conduct, but nowhere do they plausibly support the radical inference that the City, as a corporate entity, intended to harm its employees. As such, Plaintiffs' Complaint fails to state a claim and must be dismissed.

### III. A *Monell* Claim must be Supported by a Constitutional Violation by Individual Employees

Plaintiffs do not meaningfully rebut the City's argument that a *Monell* claim must be supported by an allegation of an underlying constitutional violation by a government employee. In response,

Plaintiffs simply note that *Monell* allows a municipality to be sued directly for constitutional violations. This is true, but misses the City's point. Under the caselaw cited in the City's Motion to Dismiss, any claim against a municipality cannot stand "without a constitutional violation committed by an employee." *Anderson v. Caldwell Cty. Sheriff's Office*, 524 F. App'x 854, 862 (4th Cir. 2013). Plaintiffs cite no case that contradicts this principle. One decision Plaintiffs cite in support is a challenge to a municipal regulation and does not involve a *Monell* claim. *Covenant Media of SC, LLC v. City of Northern Charleston*, 493 F.3d 421 (4th Cir. 2007). The other decision noted by Plaintiffs allows a *Monell* claim to proceed against the government entity, but never addresses the question of whether such a claim is proper in the absence of an underlying violation by an employee. *Washington v. Housing Auth. of City of Columbia*, 58 F.4th 170, 178 (4th Cir. 2023). As such, the only caselaw that directly addresses this issue makes clear that a *Monell* claim cannot stand in the absence of an underlying constitutional violation by an employee.

## CONCLUSION

For the reasons stated herein, the City respectfully requests that this Honorable Court dismiss Plaintiffs' Complaint against the City in its entirety, with prejudice and without leave to amend.

Dated: September 19, 2024

Respectfully Submitted,
Ebony Thompson
City Solicitor

*/s/ Thomas P.G. Webb*
Thomas P.G. Webb (Bar No. 18624)
Chief Solicitor
BALTIMORE CITY LAW DEPARTMENT
100 N. Holliday Street
City Hall Baltimore, MD 21202
Telephone: 410-396-5784
Fax: 410-547-1025
tom.webb@baltimorecity.gov

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that on September 19, 2024, the foregoing Reply in Support of Defendant's Motion to Dismiss Plaintiffs' Complaint was filed in accordance with the Electronic Filing Requirements and Procedures, as established by the United States District Court for the District of Maryland.

 

_____
THOMAS WEBB
Chief Solicitor